Good morning, and may it please the court. My name is Brent Bannis, and I represent the appellants in this case. This court should reverse the district court because the district court and this court have subject matter jurisdiction to review immigrant visa revocations. The presumption of judicial review under the Administrative Procedure Act is very strong. It can only be overcome by clear and convincing evidence that Congress intended either expressly or judicial review over specific administrative final agency actions. Here, there is no statute that specifies visa revocations are in the discretion of the agency here. Well, is it necessary to use the word discretion in the statute or to be a discretionary act? Your Honor, under 8 U.S.C. 1252A2B2, that is our position, that they do need to use the word discretion. And we think that's a plain reading of that provision that uses the words specified that the action to be in the discretion of the attorney general. I would note, this is what I would call the intervening case law that distinguishes my case, this case, from the admittedly eight circuits who have rejected our position. Five of those come before a case called Kukana, which is the Supreme Court's most recent analysis of this provision. In footnote 10 of that opinion, they are interpreting 1252A2B2, and they highlighted the importance of the word specified that's in the plain language of the statute. They said specified is defined as to name or state explicitly, which means it's not to be assumed, not contemplated, not implied, or not anticipated. And because Well, that's all fair. I guess the real question, and I'd like to sort of bring you back to it, is the question of whether the actual word discretion has to be used or whether the word deems, judge deems something to be a bit of a particular standard, whether that's not one of the most clear words of discretion that we have. So, Your Honor, I do think if we're going to use 1252A2B2 to preclude review, it does have to say it explicitly and use the word discretion. If we're going to use Explicitly, I don't disagree with that. But it has to use the actual word discretion or another word that means the same thing. Well, I think under 1252A2B2, it does have to use the word discretion. All right. So that's your argument. I'm sorry. Does the phrase good and sufficient cause help you out in any way? Yes, Your Honor. It cabins the agency's discretion for the reasons it can revoke an immigrant visa. That's probably the only thing that helps you on this. You recognize the eight surface and we just need to cut the chase on this. You said it needs to use the word. The statute says in the discretion. And I don't know too many of those. Every now and then we say may and shall. It doesn't look like it means here. And then when it says he deems, that's pretty clear discretion. So if you're going somewhere, maybe this is where you're going to go with it is on that good and sufficient cause as being maybe some type of a limiting principle on his discretion. Well, and again, under framing the argument, 701A1 of the Administrative Procedure Act, right, 5 U.S.C. 701A1 says a statute can preclude judicial review. 701A2 says agency is committed to the discretion by Congress. And so 701A2 would give this court looking directly at 8 U.S.C. 1155, the language you're talking about, may, for any time, good and sufficient cause. For this court to find that 1155 does not provide judicial standards that it can apply, it would have to overrule a precedent of this court that's in Odo v. Reno. It's from the mid-90s. And it's before 1252A2B2 existed. However, it directly applied the language in 8 U.S.C. 1155. It said this is your judicial, judicially, it provides judicial standards to look at this revocation. And this court did look at the revocation there. And so to find that there are no judicially applicable standards here, this panel would have to reverse a prior panel. Well, what you're doing here, are you trying to re-litigate the no-risk determination in 1154? Is that what your ultimate goal is? No, Your Honor. What are you trying to do? We're trying to challenge the agency's choice to apply the Adam Walsh Act to my client. It's a predicate decision to the no-risk determination. If they misapply it to Mr. Poufliere, then he didn't have to provide any evidence of no-risk. But in this case, isn't the no-risk necessary part of the whole ruling? Because the court concluded that you failed to demonstrate your carrier burden under the no-risk. Your Honor, the lower court said they didn't have subject matter jurisdiction to even consider that question. We didn't make it that far. I thought the agency addressed explicitly the no-risk and said you failed in your burden on that. The agency did, Your Honor. Yeah. I agree with that. So the question is whether that was a component part of the decision. So I would say, I'm sorry. Had, for instance, let's take the view that the agency did not have discretion to make the initial determination, it would clearly have had discretion to then essentially vacate that finding by finding that you hadn't carried your burden on the no-risk. Roland, the opinion from this court from two years ago is clear. There's no jurisdiction to look at no-risk determinations. That's why we didn't challenge it. We challenged the applicability of the Adam Walsh Act at all to Mr. Poufliere, and we have good reason to. He has a unique situation. The Adam Walsh Act prevents a U.S. citizen who's been convicted of certain crimes from petitioning for any family member. Mr. Poufliere, after the Adam Walsh Act passed and after his conviction, his conviction came first, Adam Walsh Act, he petitioned for his wife successfully, no problems. So at some point in the agency's determination, the same agency said the Adam Walsh Act doesn't apply. He then later applied for his stepson, who's the co-plaintiff here. They approved it again. They said the Adam Walsh Act doesn't apply. And then years later... There's probably one reading of it. It just looks like he left for where he was, applied for his wife. And quite frankly, it does look like to me what applies here would apply then. But they say they actually granted to the stepson and then revoked it. Because then they said we discovered in the process. I don't know what that means in terms of we discovered in the process. I don't know what an application looks like when you initially apply to it. The idea is if they had discovered it for the wife, they would have done it too. Well, Your Honor, we don't know what those applications look like because I haven't gotten to be able to challenge the decision and get an administrative record. But I think that's all fair. And if Mr. Poufliere didn't... You could probably find out what an application looked like from the client here, whomever. In the first instance, that's not... That's a public record. That's not something you need to go dig up too much. And I can only speak anecdotally, but my experience with FOIA trying to get those records, especially if they were in the possession of the State Department because his wife did consular process, I'm not going to get anything. But it would be a no consequence. I mean, it seems that's more of an equitable type argument. You know, they did it there. And it seems like if you had good and efficient calls back then, there's no different than then to do it. But the idea of no jurisdiction by this court arises directly from the interpretation of these statutes here. Judge Childs looked at these statutes here, probably sympathetic to your calls of action, your point of view. I think you have a very sympathetic point of view. The problem is, is when Congress cabins the court in this matter, and did you say... You say seven because you might be counting the unpublished opinion, but at least seven courts have held directly against you. That's the elephant in the room, Your Honor. I agree. So you're thinking about going to the U.S. Supreme Court and getting them to go differently on this, I take it? Your Honor, I would point you to the language in the dissent and the most recent decision of the First Circuit in Bernardo, where the judge identifies these eight cases as, quote, a cascade of precedent, right? And that they are all based on each other, they all came very, very quickly, and that there is a good scholarship out there that says that should weigh less in favor of this position because it was just a pile on, so to speak. And that he identifies the one case to come after, Acra Kucana, which again, we think changes the game here. It's very disrespectful of all our circuits of the circuit. I understand what's being said. I understand what's being said. All, everybody in the circuits had a blind eye and just followed bad law. I've been a judge of it for a while, and it doesn't seem to work that way to me. I think they, I'm going to have to respect their reasoned decisions and whether they follow each other. They did so knowingly, and they did their own study. And I agree, Your Honor. And I mean absolutely no disrespect to the circuit courts, any of them. I have great respect for this institution. And again, I would just point you to that dissent. But I also say the other more important point, I think salient point there, is that five of them, at least five of them, came before Kucana, right? This is the Supreme Court's intervening law, change in law that I think, I'm not suggesting this Court completely disagree with those cases. You can distinguish them. Kucana came out. Kucana identified this word in 1252a2b2, specified. It's in the plain language of the statute. And I would suggest that up until that point, when the Supreme Court stepped in. I think the Kucana went on fairly explicitly to explain what it meant by specified, which means not implied, not connoted from the circumstances. We have already construed that in an opinion. And the question is whether the statute on its face reveals discretion or whether it is implied from circumstances. And the Supreme Court made clear that specified meant that it has to be addressed explicitly by Congress and not implied. I agree with that. And that's, I guess I take that to the next step of it needs to use the word discretion. Well, that's your step. Yeah, right. Well, and I would just point you to, and this comes straight from Kucana. They look at the structure, right, of 1252a2b. So under that's subsection one and two. And if you look at subsection one, they identify five different. This is the language the secretary may at any time for what he deems to be good and sufficient cause, may at any time what he deems to be good. And I would say that doesn't specify the decisions in discretion. It's implicit. Kucana says it can't be implicit under 1252a2b2. So then we get to the second question of whether it's committed to the agency discretion by law. Well, I was reading statute, so it wasn't implied. If that means discretion, it's explicit. If it doesn't mean discretion, it's not explicit, but it's not a question of implication. We don't have to imply that it has discretion. I read explicit to mean it has to use the word discretion. Okay. And I understand. No, I understand that point. And I'll just point, the reason why is the structure of the statute. First off, the plain language says it has to be specified. We can't read that word out of the statute. The structure, again, 1252a2b1 identifies five different decisions that are precluded from judicial review. And in every one of those, it uses the word discretion, in his discretion, in his discretion. And the Supreme Court in Kucana said, putting these two provisions so close together, it says they're trying to, this is supposed to be a catch-all for decisions of the same genre. So when it uses the word specified, it's informed by the fact that all of the decisions just above it that are expressly precluded from judicial review, actually use the word discretion. And again, footnote 10, I think, of Kucana is where I'm hanging my hat on 1252a2b2. And it goes through and simply says specified, and it defines it from a dictionary to name or state explicitly. Well, you know, frankly, I think you're making some good points. And your points are very clear. You made up a mold. That's a tough one. You're fighting it. Tell me, what does this good and sufficient cause mean in your interpretation? I'm not sure it's tied in with saying there's no discretion. It seems to be tied in with saying that is something of a limitation here that the court could determine as whether there was good and sufficient cause. If he has a good and sufficient cause, then he has discretion. What does that mean to you? So what this court said in Odo v. Reno is that was a revocation of a marriage-based immigrant visa. And it determined that because the agency went and did further investigation and found marriage fraud and that there's a provision that says, you know, you can't get a marriage-based visa if it's a fake marriage. They said that's good and sufficient cause. They pointed to another statute in the INA, 8 U.S.C. 1182c4, I believe, and said, you've shown us marriage fraud. That's good and sufficient cause. So here, what I would suggest is the agency may have had good and sufficient cause if they properly applied the Adam Walsh Act. That's it. It's nothing more than that, Your Honor. And again, I would suggest that this court would have to reverse a panel, admittedly from 25 years ago, but it is still good law in this circuit. Reverse what panel? Reverse the panel in Odo v. Reno, which, again, it's a Fourth Circuit panel saying... How are we going to do that? Well, I would suggest you shouldn't. And they apply the good and sufficient cause standard in that case without issue. I would also point you to all of the cases in the Ninth Circuit where they've been recognizing jurisdiction over visa revocations since 2004, and they apply the standard regularly. I see my time is running out, and I would just, with your permission, say one last comment. That is, one thing we haven't addressed is that this preclusion, as the government's urging it, does preclude all challenges, constitutional challenges and legal challenges. And that makes it an even heightened standard that we have to demonstrate from congressional intent to preclude all review of all challenges, constitutional included. Thank you, Your Honor. Thank you. Ms. Nickerson. Good morning, Your Honors. May it please the Court, my name is Theo Nickerson for the appellees. Appellate's arguments ignore that the visa revocation in this case is based entirely on a predicate, solely discretionary, no-risk determination under the Adam Walsh Act. Because the no-risk determination and the decision to revoke cannot be divorced, the Court lacks jurisdiction. Further, this Court lacks jurisdiction over all visa revocations. Initially, this Court lacks jurisdiction under the Adam Walsh Act, Section 1252A2B2, and this Court's binding precedent in Rowland and Lee. Here, appellant does not contest that he was convicted of child pornography possession, a qualifying sexual offense against a minor under the Adam Walsh Act. He also does not challenge that he failed to demonstrate that he posed no risk to his visa beneficiary's stepson. Notably, he does not challenge that no-risk determinations are within the sole and unreviewable discretion of the agency, nor does he address the jurisdictional bar at 1252A2B2, which clearly precludes review of discretionary determinations such as these. The basis for this revocation was the conviction. If the Secretary chooses to allow it, as it did in the instance of the wife, does that indicate, in that instance, that the Secretary did not find good and sufficient cause? So, interestingly, just to answer your question earlier, that I talked about... Answer that one. Okay, okay. And just to tie it in. Basically, what happened in this case was that this conviction existed and he petitioned for his wife and it was approved and... The conviction was in 2000. Correct. He did petitions for the wife in 2008, so after 2006 enactment of the Adam Walsh Act. Correct. So clearly, it's the same situation. Exactly. And what happened? Essentially, the conviction did not come to light until the steps that applied to adjust his status based on... What do you mean, come to light? It was not discovered. It's a general court-martial conviction, so on the application, an applicant is not required to disclose prior convictions and things that maybe the Secretary, in his discretion, might consider that would be a reason not to give. They are required to disclose that and I'm not sure what happened in this case as to why it came out. He did not disclose it either there or... Because it seems like to me that in and of itself would be a reason not granted. He didn't disclose something like this and I don't know how he should. You'd be up if he just didn't disclose it. But the other side doesn't bring it out. I don't get it. It seems like to me that's important. If the Secretary, having been information disclosed, makes a decision to allow the visa in one instance and that seems to indicate there's no good and sufficient cause not to let it go and then another one comes up and it's on the very same basis. Nothing is new. He says, no, we now discovered this. And I got it. Maybe sometimes things can fall to the cracks or whatever but I'm really interested. Does that application require you to disclose? I can't imagine that you can apply for this and not disclose on the application that you have a prior conviction or that you have something disqualifying like this. It does require you to disclose your prior convictions and I'm not sure if that didn't happen and that's why the agency didn't do it or if the agency revoked because it seems to me from the agency's decision that's part of the record that they were very clear that they did not know and whether that's because he failed to disclose or not. It was very clear that they did not know about the prior conviction until the decision to revoke. The perspective of the opponent and from you, it would be really interesting, at the very least, maybe even helpful to a great degree to know if he went in there and applied for his wife, put up there right in that spot, I have a general court martial conviction for child pornography and the secretary gave it to him. Now, at that point in time, it's on your application. You kind of knew it. I don't think that's just applied. He tells you, I have it and gives it to his wife, later on gets a stepson to come up, does the same thing, does not give it to him. And I don't know, maybe it's not up there because the other side, you would think they would bring it up, but I'm just curious because to me, I'm not sure what that does in terms of jurisdiction, but it certainly does indicate that if the secretary has already, you can't treat people differently, you've already done this, that implies or at least makes a very statement, the secretary did not find good insufficient cause and therefore did not exercise his discretion. But now it does. I mean, it's just all in trouble. I'm just saying, I'm wondering about that application and finding out about general court martial convictions, which are federal offenses. They're all about those things. This particular one is one that incorporated a federal offense, so it's right there. I don't know if they run a background check or whatever. How would they find it with the stepson? They found it out on his application to adjust his status. That's when it became known. It was not clear that the agency, it was not known to the agency prior to that. And the only thing I can infer from the record is that there was no information about it, that they had no information about the conviction until the time of the adjustment application. So when the defendant actually applied for this visa petition for a stepson, from your statement, it appears he's not required or just did not do it. The agency did not know about it. So he must not have... You want to say, you say they don't know about it, but you want to say that because you're saying either it wasn't put up, it's not required to be on the application and it wasn't put up there. And I'm only asking, do we not know what the application looked like? We do know what an application, a general... Does the application ask questions that require this kind of information to be disclosed? I would assume so. So I thought you said you had the application. No, we don't have the application. In this case, it's part of the record, but generally a visa application is easily accessible. So then clearly he must not have disclosed it. He must not have. Because if he disclosed it, the agency can't credibly stand before us and say, we didn't know. No, and that's not our position, is that our position is not that we are not taking the position that we could apply it to the wife and not to the son. We're not taking that position. You got to be consistent. Our position is that it did not come to light until the adjustment of status. I don't know who has that burden. I'm just thinking from the other side. If it was a case in which that's the case, that would be huge in my opinion. I agree. Let me ask you this. Are you taking the position that the appellant is barred from bringing his constitutional and legal challenges? Yes. Assuming we agree with you on the first part. And tell me why that is. Sure. So first of all, the appellant has waived any constitutional or legal challenge because he hasn't raised one in his opening brief. So assuming you still want to address whether there exists a constitutional and legal challenge exception for visa revocations, this court should follow the 3rd, 8th, and 10th circuits who have all found that 1252 A2D allows for constitutional and legal claims only within the context of a petition for review from removal proceedings. And that's because the plain language of 1252 A2D, while it created an exception to 1252 A2B2, it did so only within the context of a petition for review. Congress thereby explicitly channeled judicial review into the context of petitions for review from removal proceedings. So therefore, the appellate's interpretation of the statute does not actually preclude judicial review of all constitutional claims because the appellant could at any time be placed in removal proceedings where he could raise any constitutional or legal challenges that he has at that time. So you're saying that he can raise his claims during future removal proceedings? Absolutely. And I think this court's binding precedent in Rowland and Lee is very clear to that point that 1252 A2D does not provide a legal bootstrap into district court to challenge discretionary determinations. Basically, 1252 A2D exception applies to removal proceedings. Correct. In this case, he never got there. No, but... Actually, the whole statute, 1252, applies to judicial review of removal. And it only authorizes it in the context of removal proceedings. It starts with that in A. In mind. Yes, Your Honor. In its title and in A. And then these are exceptions to it. So the scheme that Congress anticipated was that in connection with an order of removal, you can petition for review by the circuit court and raise your constitutional issue. Correct. And to the extent that the appellant argues there's a heightened standard under Webster, that standard is met where Congress clearly specified in 1252 and under the Adam Walsh Act and Section 1155 that this is a discretionary determination. And that its intent was clear to foreclose legal and constitutional claims. Therefore, that heightened standard is met. So... Is that it? If this court has no further questions... Well, if you have anything... Well, I think that the important part of this case is that this is a discretionary no-risk determination that was made because he has a qualifying offense and he doesn't challenge that. And under... And I think Roland is controlling in this case in that it held... There it held, the court held that they could not separate the predicate no-risk determination, which is judicially unreviewable from the decision to deny a visa. And the same is true with the decision to revoke a visa on a predicate no-risk determination. There's no jurisdiction. Both those decisions are judicially unreviewable under 1252 A2B2. And I think the fact that Roland involved a visa denial rather than a visa revocation is of no legal consequence because we also have eight other circuits who have said that visa revocations in and of themselves are judicially unreviewable. And just a few more points to respond to appellant's arguments about the good and sufficient cause standard. One cannot look at the good and sufficient cause language in section 1155 and ignore the preceding words, which are for what he deems to be, which makes clear that what constitutes good and sufficient cause is to be applied in the secretary's discretion. It's not a legal standard in and of itself to be applied by the court. And it does not undermine the may and at any time language that signifies Congress's clear intent to make visa revocations discretionary. So I think for both the reasons that this is based on a predicate, no risk determination under the Adam Walsh Act and because visa revocations are discretionary by the plain, specific and explicit language of section 1155, I think this court lacks jurisdiction and should join the eight other circuits who have found the express terms of section 1155, including the terms may, at any time and for what he deems to be good and sufficient cause, all signify Congress's clear intent that visa revocations are in fact discretionary. So for both those reasons, this court lacks jurisdiction and does not have any jurisdiction to consider any of appellant's unraised constitutional, hypothetical, constitutional or legal issues at this time. Also to address another argument, appellant's reliance on auto is also misplaced in this case. That decision predated the jurisdictional bar at 1252 A2B2 and it also predated the Adam Walsh Act. Finally, with respect to the Ninth Circuit who has found the good and sufficient cause standard can be used to review judicial visa revocations, the Ninth Circuit actually in a case, Solorio v. Sessions, actually held that when a visa revocation involves a predicate no risk determination under the Adam Walsh Act, that it lacks jurisdiction. So even in the only circuit to find general jurisdiction over visa revocations has held that when there's a predicate no risk determination, that decision is also judicially unreviewable. So for both those reasons in this case, the court is without jurisdiction to review this case. If the court doesn't have any other questions for me, I'll go ahead and sum up. This court lacks jurisdiction and should dismiss this appeal. Thank you. Thank you, Ms. Nickerson. Mr. Vannese. I will be brief. Judge Winn, today's version of Form I-130, Petition for an Alien Relative, requires the U.S. citizen petitioner to check a box about whether they've been convicted of sexual offenses or not. Whether the form in 2008, when Mr. Poufliat filed it, had that same box on it, I don't know. It may not matter because the assessment here would be whether the risk was, it probably could say the risk as to the wife is different than the risk as to the child. So I don't know what it means in the long run, but at least in terms of indicating at some point the same information the court, the secretary found presumably, knowing this was there, there was no good and sufficient cause, but I don't think that's an issue here. You know, let me ask you this. What about, tell me why you think you ought to be able to bring a constitutional and legal challenge? Because Congress hasn't clearly and convincingly said they are completely precluded. My opponent stood up here, I should say, government counsel stood up here and said that we can challenge this in a petition for review. That's wrong. It's absolutely wrong. It's a different defendant altogether. Notice that caption. This is against Mr. Cuccinelli. He's the head of USCIS. You bring a petition for review, which I know this court sees a lot of. The defendant's always the Department of Justice. Yeah, but that's addressing, that's an attack on the whole statute saying that you should have some active, but the question is, how do you read section 1252, which gives us judicial review? Well, what I think the government is arguing here is that they are not arguing, they're preventing all constitutional challenges, right? They're saying, no, no, we're channeling it, which is a different concept, right? That's what the statute does. The statute says that you don't raise it in the fashion you did. You raise it in connection with a order of removal and upon a petition for review, and they use both words explicitly in the statute. And a petition for review is limited to the issues of the immigration? Well, whatever it's limited, that's what the authority Congress gave. I mean, you're basically just identifying what Congress did in 1252. We don't have judicial review over everything the agency does. We're granted it under 1252, is that right? I agree with that, Your Honor. And 1252 does not give this court, through a petition for review, jurisdiction to review a visa revocation. Well, it doesn't, it may or may not. The subservient question is whether on removal you can address an earlier basis for that removal based on the visa business. We don't have that before us because we don't have a petition for review from a removal order. But the answer to that question is no. Well, we don't know that. That's not been determined, and we don't have that determination before us. We don't have jurisdiction to review that. 1252B outlines what this court can hear in a petition for review, and it does not include decisions by a sister agency about eligibility for visas. That's because it's limited to what the immigration- You know, it's a little bit like a trial. A court makes a ruling during the course of a trial that a certain evidence is inadmissible. We still don't review that. What we review is the final judgment. Now, when we review the final judgment, we often review component parts of that, which might be earlier rulings made by the judge. The question here, which is unresolved, and we don't have the power to resolve it now, is whether when we have a petition review on removal, whether we can review the components that led to removal, such as the denial of a visa adjustment. I would suggest that has been answered, and it's very clear. This court does not. And so when the government stands up here and says, no, no, no, you just got to go a different way, that's not a path I can take, period. Even if Mr. Misato got put- We're going to create a new statute, or what are we going to do? What I'm suggesting is that- And you've brought it in a district court. If these- Clearly, no statute authorizes you to raise a constitutional issue in a district court, and that was dismissed by the district court. Shouldn't we have to affirm the district court on that? No, Your Honor, because we don't have to have a statute that allows me to bring constitutional claims. We have to have a statute that prevents us from bringing constitutional claims. The government has said, we're not saying no constitutional claims. You have to go through this channel. That's just wrong. It's not an avenue we have available to us, period. It's not a disputed area of law, Your Honor. And so what- To answer Judge Floyd, your question, we have due process allegations in our complaint. We have unconstitutional retroactivity questions that focus a lot on what Judge Wynn has identified of the factual case here. And I'm perplexed why the government has argued we waived these. The district court said, no jurisdiction. I can't appeal a decision that the district court didn't make. And so I do not think we waived those. If you look at pages five and seven of the record, you'll see where we made them in our complaint. And I see my time is up. If you may, I can sum up. Sure. For this court to find that there is no judicial review over any challenges, constitutional or otherwise, to a visa revocation would be a uniquely preventative decision in administrative law. It is anathema for Congress to be able to get away with precluding constitutional challenges. And that's what's presented in front of this court. And so, thank you, Your Honor. Thank you. We'll come down and greet counsel and proceed on.
judges: Paul V. Niemeyer, James A. Wynn Jr., Henry F. Floyd